1  **LAW OFFICES OF STEVEN R. FOX**
   Steven R. Fox, SBN 138808
2  Daniel J. Park, SBN 274893
   17835 Ventura Blvd., Suite 306
3  Encino, CA 91316
   (818)774-3545; FAX (818)774-3707
4

5  Attorneys for Debtor-in-Possession

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SAN FERNANDO DIVISION

11 In re                          ) CASE NO: 1:11-bk-14900 MT

12 Gotta Dance Studio, Inc.,      ) CHAPTER 11

13                                ) MOTION FOR AUTHORITY TO USE
                                  ) CASH COLLATERAL ON AN
14                                ) INTERIM AND FINAL BASIS;
        Debtor.                   ) MEMORANDUM OF POINTS AND
15                                ) AUTHORITIES

16                                ) Date  : To be set
                                  ) Time  :
17                                ) Place :

18                                ) First Day Declaration of Cindy Gebelein
                                  ) Concurrently Filed
19
                                  ) Petition filed April 20, 2011
20 _____)

21   **TO THE HONORABLE BANKRUPTCY JUDGE:**

22   **COMES NOW** Gotta Dance Studio, Inc., ("Gotta Dance" or "Debtor"), the

23 Debtor-in-Possession, with its Motion.

24        First California Bank and NewTek (here called the "secured lenders") appear to

25 hold properly perfected security interests in the Debtor's personal property assets

26 including its accounts.

27        Gotta Dance seeks authorization to use its monies to operate its business, to pay

28 employees, to pay rent and utilities, to complete existing jobs, and to perform future jobs.

1  to do so on an interim basis and then on a final basis. If Gotta Dance cannot use its cash
2  collateral, it would be unable to remain in business and its reputation will be severely
3  harmed. Authorizing the relief requested below will benefit the lenders as the use of cash
4  collateral will protect their security. The Debtor's adequate protection offer is discussed
5  in the Memorandum

6      Gotta Dance requests that it be authorized to use cash collateral as the secured
7  creditors are adequately protected in various manners. Gotta Dance requests the Court
8  authorize Gotta Dance to operate its business pursuant to the proposed budget attached
9  to the Gebelein First Day Declaration as **Exhibit "C"** with the various variances and the
10 rollover provision proposed in the Memorandum and also grant replacement liens to the
11 secured parties.

12     **WHEREFORE** Gotta Dance requests that the Court take the following actions:

13     1.    Enter an order authorizing Gotta Dance to use cash collateral on an
14         interim basis as per the budget attached to the Gebelein First Day
15         Declaration, grant a 20% variance and carry forward provisions
16         requested above.

17     3.    Set a hearing on final use of cash collateral in the ordinary course of
18         business. At that hearing, Gotta Dance will seek authority to use cash
19         collateral in the ordinary course of business and without a
20         requirement it adhere to a specific budget.

21     4.    Approve the request to set aside monies for professionals.

22     5.    Grant the secured lenders a replacement lien in property of the
23         estate.

24     6.    Such further relief as the Court deems appropriate and which is
25         consistent with this Motion.

26
27
28

1 | Dated: April 19, 2011

LAW OFFICES OF STEVEN R. FOX

*/s/ Steven R. Fox*

Steven R. Fox, proposed counsel for Gotta Dance Studio, Inc., Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AUTHORITY TO USE CASH COLLATERAL

1. This case was commenced on April 20, 2011, by the filing of a voluntary petition for relief under Chapter 11 of the U. S. Bankruptcy Code. Since then, the Debtor has been, and continues to be, a Debtor-in-Possession. No examiner or trustee has been appointed and no official committee of creditors has been established.

## I.

## The Debtor's History

2. Gotta Dance is a private dance studio in the San Fernando Valley. Gotta Dance serves over 600 students by offering dance classes including jazz, ballet, hip hop and theater dance programs. While its program offerings represent a broad range of dance, Gotta Dance's primary focus is on jazz and ballet.

3. Gotta Dance's financial problems developed over a period of years. The reasons for the chapter 11 filing are discussed in detail in the Gebelein First Day Declaration. Briefly, Gotta Dance's business initially experienced rapid growth and quickly outgrew its physical location. Another studio was built and more teachers were hired to teach the approximately 300 students, with another 150 students on a wait list. As business continued to grow, the need for studio space also increased. In 2006, Gotta Dance undertook a large expansion of the business. Gotta Dance moved to a new dance studio location, a former dinner theater that housed six dance floors and a small retail store selling dance clothes, ballet outfits, and dance shoes. Gotta Dance also brought in two shareholders. For various reasons, the partnership did not work out and the Debtor needed to borrow money in order to buy out the stock interests of the former partners. The onset of the recession, an increase

location led to difficulties for Gotta Dance to pay its bills.

## II.

## Gotta Dance Today and Moving Forward.

4. Gotta Dance is a good studio. Despite the hard economic times, Gotta Dance still has some 600 students and still carries a wait list. It has the overhead, the lawsuits and the problems which led it to chapter 11.

5. Gotta Dance carries general liability and workers compensation insurance. With the exception of the payroll which will occur after the chapter 11 case is begun, payroll and payroll tax obligations are current.

6. To reorganize, Gotta Dance will take a number of steps.

7. First, Gotta Dance will move from its current location to a smaller location. The monthly rental payment will go from $16,059.88 plus CAMS down to $5,600. This one change will have a big impact on Gotta Dance's ability to reorganize.

8. Second, Gotta Dance will become a better business. By that, I mean that business principles will be applied more rigorously than they were in the past.

9. Third, I am going to continue to look for the dance teachers who are willing to make programs their own and will work harder in exchange for a cut of the program revenues.

10. Fourth, the retail store will be closed.

## III.

## Gotta Dance's Assets, Liabilities, Income and Expenses.

11. <u>Assets</u>. Gotta Dance's assets include the following:

- Monies in the bank of $9,153 as of April 16, 2011.
- Accounts Receivables, equipment and other personal property valued at $16,100 as of April 16, 2011.
- Goodwill from being what is probably the largest dance studio in the San Fernando Valley with solid earnings and a solid dance program.

12. A true and correct copy of a current balance sheet, taken from the Debtor's

QuickBooks program is attached to the Gebelein First Day Declaration as **Exhibit "A."** A true and correct copy of a listing of accounts owed by student dancers is attached to Gebelein's First Day Declaration as **Exhibit "B."** This listing is taken from the Debtor's Quickbooks program as well. In this report, the student names have been deleted and numbers have been inserted in their place.

13. <u>Secured Claims</u>. First California Bank and NewTek hold what appear to be properly perfected security interests in the Debtor's personal property assets including its accounts, equipment, inventory and other personal property. The Debtor does not here challenge the validity of their security interests but presumes for purposes of the first day motions that the security interests are properly perfected. The value of the Debtor's personal property assets including its monies is minimal. The Debtor is unaware that either lender has a control agreement to secure the Debtor's monies. The lenders are collectively owed approximately $415,000. True and correct copies of loan documents and the UCC-1 Financing Statement are attached to the Gebelein First Day Declaration as **Exhibits "F" and "G."**

14. <u>Unsecured Claims</u>. Gotta Dance unsecured claims may exceed $128,000. **Exhibit "H"** of the Gebelein First Day Declaration, which is a copy of the Debtor's Schedule F.

15. <u>Income and Expenses</u>. Gotta Dance is an S-corp. Its tax year ends on December 31st.

| Year | Gross Receipts | COGS | Total Income | Ord. Bus. Income/Loss |
|---|---|---|---|---|
| 2007 | $792,068 | $46,882 | $756,186 | $45,283 |
| 2008 | $841,599 | $29,066 | $812,533 | $106,128 |
| 2009 | $819,136 | $27,582 | $791,554 | $27,330 |
| 2010 | $696,186 | $9,280 | $686,906 | $112,870.96 |

16. Attached to the Gebelein declaration as **Exhibit "C"** are true and correct copies of selected pages from the Debtor's federal income tax return for fiscal years 2007 through 2009. The pages are true and correct copies of what Gotta Dance keeps

in its business files.[1]  **Exhibit "D"** is a true and correct copy of a financial report reflecting income and expenses for year 2010.  The report was prepared from Gotta Dance's financial software program using Gotta Dance's computer system.

17. **Exhibit "E,"** attached to the Gebelein First Day Declaration, is a true and correct copy of a projection of income and expenses going forward.  The projections are based in part on the company's historical performance but also on how Gebelein believes the company will perform in the future.  The budget is unaudited.  Barring unforseen events, the projection is a good estimation of income and expenses going forward.  In Gebelein's opinion, Gotta Dance will not lose money during the time covered by the projection.  It will also maintain monies in its bank account to deal with the expected C.O.D. terms vendors will likely require as they learn about the chapter 11 filing.

18. <u>Expenses</u>.  In none of the prior four years has Gebelein taken compensation exceeding $100,000.  Gebelein is widowed and is raising six children aged 23 down to 7.

### IV.
### Request for Authority to Use Cash Collateral.

19. The two lenders hold what appear to be security interests in most of the Debtor's personal property assets including its accounts.

20. The Court should set an immediate hearing on this request.  The Debtor seeks authority to use cash collateral on an interim basis under the budget attached here.

21. Gotta Dance requires the use of cash collateral in order to operate its business, to pay employees, to pay rent and utilities, to complete existing jobs and to perform future jobs. Without the use of cash collateral, Gotta Dance will be

---

[1] Gotta Dance maintains its financial records in the Quickbooks and Microsoft Excel programs.

unable to remain in business. If Gotta Dance cannot use the cash collateral, its reputation will be severely harmed. Authorizing the relief requested below will benefit the lenders as the use of cash collateral will protect their security.

22. If the lenders' security interests extend to the Debtor's assets including its monies, then Gotta Dance does not have unencumbered sources of monies or other assets to pay ordinary course of business obligations.

23. <u>Interim Use</u>. Gotta Dance should be authorized to use cash collateral on an interim basis as per the budget attached here as **Exhibit "C."**

24. <u>Variance</u>. We have done our best to make accurate projections concerning income and expenses. However, budgeting is not an exact science, especially in light of the current recession and changes in how individuals are spending money. We may need to increase classes and the number of instructors in order to handle increased demand. We may face higher than expected utility costs. In the event that Gotta Dance determines that it will need to vary from any one budgeted item by more than 20%, Gotta Dance proposes that it provide written notice by email or telecopier of the variance to The Bank and if the lenders do do not object to the variance within **48 business hours**, then the variance will be deemed approved. In the event either lender objects, then Gotta Dance will seek to hold a hearing on shortened notice to address the requested variance.

25. <u>Rolling Unspent Expenses Forward</u>. The budget is a weekly budget. It is likely Gotta Dance will underspend in certain categories in some weeks. Gotta Dance requests that the Court authorize the Debtor to carry over from previous weeks any unused monies to be used in the same categories in future weeks. Gotta Dance also requests that the monies carried forward not count toward the 20% variance.

26. <u>The Lenders' Interests Are Adequately Secured</u>. The lenders are afforded adequate protection of their claim in many ways.

    a. The lenders' claims amount to perhaps $415,000. The amount of

their claims are relatively low in comparison to the revenue Gotta Dance generate annually.  Operation of the business protects the lenders' security interests.

    b.    Operation of the business maintains assets subject to the lenders' security interests.

    c.    Continued operation generates additional revenues.

    d.    All assets are adequately insured.  Proof of insurance will be provided on request to the lenders.

    e.    Gotta Dance proposes the lenders be granted replacement liens in the assets of the estate to the extent that their prepetition liens attached to property of Gotta Dance with the same validity, priority, and description of collateral.

27.    <u>Final Use of Cash Collateral</u>.  Gotta Dance requests that the Court set a hearing on final use of cash collateral and, at that hearing, authorize Gotta Dance to use cash collateral in the ordinary course of business.

28.    <u>Professional Fees</u>.  Prepetition, Gotta Dance professionals were paid retainers.  I understand this case is a complicated case.  The retainers likely will be used up in the next few months.  Gotta Dance seeks authority to use cash collateral to pay these fees.  If approved, Gotta Dance would, later in the case, set aside monies designated for this purpose on a monthly basis into a separate bank account.  The professionals, after their retainers were drawn down, would apply for compensation from the monies deposited in the separate bank account.  During the case, Gotta Dance will replenish the monies in the account.  The monies would not be withdrawn under the U.S. Trustee's draw-down procedure absent order of the Court.

29.    The Bank is afforded adequate protection of its claim for many reasons.  Payment of professional fees enhances the estate's ability to reorganize which also provides further adequate protection to The Bank.

30. <u>Insiders' Compensation</u>.  The budget provides for compensation for insiders but Gotta Dance will not pay insiders pending either an order of the Court or the successful completion of the insider compensation request process utilized under the U.S. Trustee's Guidelines

31. <u>Waivers and Cash Collateral Stipulation Form 4001-2; Notice</u>.  There is no stipulation for the use of cash collateral.  There are no provisions in the Application that are referenced in Official Form 4001-2.  Gotta Dance is not here waiving (1) any right to dispute the validity of any lien, (2) to challenge whether particular assets are subject to a security interest, (3) to invalidate a security interest, (4) to surcharge collateral or (5) to maintain any claims that Gotta Dance may have against the lenders.

32. Notice and the Motion will be served on the various addresses the Debtor has accumulated for the various lenders (both secured and effectively unsecured lenders), on the Office of the U.S Trustee and the unsecured creditors when the Debtor obtains a hearing date and time on this Motion.

## V.
## Conclusion

Lebens requests that the Court take the following actions:

1. Set an immediate hearing on this Motion.
2. Enter an order authorizing Gotta to use cash collateral on an interim basis as per the budget attached to the First Day Declaration and grant the 20% variance and the carry forward provisions requested above.
3. Set a hearing on final use of cash collateral in the ordinary course of business.
4. Approve the request to set aside monies for professionals.
5. Grant to the lenders replacement liens in collateral of the estate as discussed above.

6. Such further relief as the Court deems appropriate and which is consistent with this Motion.

Dated: April 19, 2011

LAW OFFICES OF STEVEN R. FOX

_____
Steven R. Fox, proposed counsel for Gotta Dance Studio, Inc., Debtor-in-Possession